1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GOLD CREEK CONDOMINIUM-PHASE I ASSOCIATION OF APARTMENTS OWNERS, a Washington non-profit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Connecticut company, THE AETNA CASUALTY AND SURETY COMPANY, a Connecticut Company; TRAVELERS CASUALTY AND SURETY COMPANY, a Connecticut Company; AETNA CASUALTY AND SURETY COMPANY OF ILLINOIS, a Connecticut Company; TRAVERLERS CASUALTY INSURANCE COMPANY OF AMERICA, a Connecticut company; and DOE INSURANCE COMPANIES 1-10,<br><br>    Defendants. | CASE NO. 20-5690 RJB<br><br>ORDER ON MOTION TO EXCLUDE |

ORDER ON MOTION TO EXCLUDE - 1

1   This consolidated[1] matter comes before the Court on Plaintiff's Motion to Exclude Defendant State Farm Fire and Casualty Company ("State Farm") Expert James Perrault's New Expert Report and Related Portions of his Second Declaration under Fed. R. Civ. P. 37(C)(1). Dkt. 84. The Court has considered the pleadings filed regarding the motion and the remaining file.

This insurance coverage dispute arises from water damage at the Gold Creek Condominium complex ("Gold Creek" or "complex") which is located in Tacoma, Washington. Dkts. 12 and 29. The Plaintiff condominium owners' association alleges that the Defendant insurers issued policies that covered the damage and that they have improperly denied coverage. *Id.*

## I.    FACTS AND PROCEDURAL HISTORY

On October 13, 2021, the expert witness disclosure/reports deadline was set for February 16, 2022. Dkt. 32. The discovery deadline was set for April 18, 2022. *Id.*

On April 15, 2020, State Farm submitted a report by James Perrault, P.E. In this report, Perrault states that as part of State Farm's request, he "identified the primary causes for the water intrusion that resulted in deterioration occurring in gypsum sheathing, decay in wood framing, and corrosion in steel framing at some of the investigated locations." Dkt. 48 at 12. Perrault opined that the siding used was not "a weatherproof panel system," that the "siding system used at Gold Creek included field applied plywood as siding that was then coated with a stucco finish coat in the field." Dkt. 48 at 17. He noted that they knew of "no approval of this type of siding

---

[1] On May 26, 2021, this case was consolidated with *Gold Creek Condominium – Phase I Assoc. of Apartment Owners v. Saint Paul Fire and Marine Ins. Co., et.al.,* U.S. Dist. Ct. for W.D. Wash. case number 21-5268, Dkt. 19. All future filings in these consolidated matters are to be filed in this case, *Gold Creek Condominium – Phase I Assoc. of Apartment Owners, v. State Farm Fire and Casualty Co.,* U.S. Dist. Ct. for W.D. Wash. case number 20-5690. *Id.*

ORDER ON MOTION TO EXCLUDE - 2

system to be considered an approved weatherproof panel siding." *Id.* He also noted that there was no separate water resistive barrier between the siding and gypsum sheathing, and that there was no "water-repellent" stamp on the gypsum sheathing. Dkt. 48 at 17. He opines that the "sheathing did not qualify to be installed without a weather-resistive barrier" and so violated the building code at the time. Dkt. 48 at 17. Perrault asserts that "[b]ecause of the lack of a proper weather-resistive barrier covering the gypsum sheathing . . . it was noted that there were areas where the underlying gypsum sheathing was stained, coated with organic growth, or deteriorated to the extent the face paper had separated from the gypsum core . . . particularly below windows and vents." Dkt. 48 at 17. The deterioration also included erosion and fracturing of the gypsum. Dkt. 48 at 18. Perrault observed that there was a "failure to properly design and construct the deck systems at Gold Creek with a proper waterproof membrane, and construct the drop-down beam enclosures with proper and adequate flashings and sealant joint, resulting in long-term water intrusion occurring into these deck beam enclosures over the years." Dkt. 48, at 21. He noted other construction defects and concluded that:

> At the exploratory openings made in the exterior walls, exterior decks and exterior walkways . . . there was evidence of repeated water intrusion occurring judging by the staining and deterioration in the gypsum sheathing and corrosion in the steel framing at some of the investigated locations. The improper and/or inadequate construction of the exterior walls, and the failure to adequately maintain the building enclosure system at the exterior walls . . . led to rainwater infiltrating in during the frequent rainfall. The rainwater entered through gaps in siding, siding-to-window joints, failed caulking, failed or inadequate flashing assemblies and the failure to properly replace sealants at the joints over the years, which resulted in rainwater infiltrating into the exterior wall assemblies at some locations over the years.

Dkt. 48 at 22.

Perrault was deposed on March 31, 2022 and April 11, 2022. Perrault also testified that after seeing the building plans, he changed his opinion about whether the architect intended to use weather repellant panel gypsum sheathing. Dkt. 48 at 165-166. He stated that while the

ORDER ON MOTION TO EXCLUDE - 3

architect did not "call out water-repellent panel sheathing" in the plans, based on a photograph taken by the Plaintiff's expert Mr. Soltner, that shows a water-repellent stamp on the gypsum sheathing in one spot, he felt that the builders installed it in at least one place, and that "we'll probably never know" if they got it everywhere. Dkt. 48 at 166. Perrault testified that if it was placed everywhere, he changed his opinion that the complex was not built to code based on a lack of a water resistive barrier between the siding and the gypsum sheathing. Dkt. 48 at 166. He agreed that installing the siding over the water repellant sheathing was code compliant when the complex was built. Dkt. 48 at 170. Perrault testified in his deposition that he would have expected to see the water-repellant stamp in more than just one or two of the openings, so he just doesn't know that it was used throughout the buildings. Dkt. 68 at 25-26. He also testified at his deposition that if Tex-Cote was the material used over the plywood siding, it was contrary to the manufacturer's specifications and would be a "defective or faulty application." Dkt. 68 at 27. Perrault testified that construction can be inadequate even if it doesn't violate the building code. Dkt. 68 at 28.

Perrault testified that he felt that there were other issues with the exterior walls that still made them non-complaint with the code. Dkt. 48 at 170. He points out that penetration flashings still should have been used at the windows and decks. *Id.* He opines that the use of water repellant sheathing does not change his opinion that the failure to use flashings are still construction defects even if the building was code compliant. *Id.* Perrault testified that there would be water intrusion reaching the gypsum sheathing during each rainy season since construction. Dkt. 48 at 174.

Perrault also agreed that if the weather-resistive barrier was the water repellant gypsum sheathing, installing flashings would not have mattered because "the water would have been directed just onto the gypsum sheathing, which if it was water repellent it was effectively acting

ORDER ON MOTION TO EXCLUDE - 4

as the weather-resistive barrier." Dkt. 48 at 181. He does maintain that it was still a code violation not to use flashing even if the "value is limited." Dkt. 68 at 8-9.

Perrault testified that the building plans called for the use of flashing on the base of the decks and the failure to use flashing on the decks was a code violation. Dkt. 68 at 9-12. Perrault testified that when water wicks into gypsum sheathing it goes up about six to eight inches. Dkt. 48 at 183.

In his first declaration filed in support of State Farm's summary judgment motion, Perrault states that:

> Exterior building envelopes are designed and constructed for the purpose of preventing damage from weather conditions. Rain and wind are and have been known elements of the Pacific Northwest climate . . . Buildings constructed in the Tacoma area therefor are supposed to be designed and constructed to prevent rain from entering and damaging materials inside the exterior cladding. . . the exterior envelope of the [complex] failed in this essential purpose. The construction of the exterior envelope of these buildings was inadequate to prevent damage from water intrusion from rain.
> Construction at Gold Creek was inadequate because the builders failed to install building paper underneath the stucco coated plywood siding to serve as a weather resistant barrier. There was no waterproof membrane installed under the tile surfaces or topping slabs of decks, or under surfaces of exterior walkways. Connection plates and related hardware for deck posts and guardrail connections were exposed to the weather, resulting in corrosion. A storage area under an exterior stairway was damaged by water because stairs contained open joints and gaps.
> In addition, construction was defective because it violated the building code in effect at the time of construction. There was no deck to wall flashing at the base of walls, which was required by code and specified on the building plans. The decks lacked water proof membranes, permitting water to pass through deck surfaces and saturate the mortar and topping beds underneath. Moisture would then wick up at the bases of the walls into the gypsum sheathing, causing deterioration to the sheathing at the base of the walls at some locations. This also allowed water to come in contact with steel studs, resulting in corrosion.

Dkt. 64 at 5. He states that even if one panel of gypsum sheathing at the bottom of a wall adjacent to a deck was found to have a water repellant stamp, that doesn't mean that all the sheathing was water repellant and notes that "significant repairs" were made to the decks on

ORDER ON MOTION TO EXCLUDE - 5

more than one occasion. *Id.*, at 6. Perrault states that he "observed damage from faulty or inadequate maintenance," including Plaintiff's failure to "properly maintain sealant around windows and doors." *Id.* He further noted that corrosion had leached through plywood and the stucco-like exterior cladding material causing orange staining. *Id.* Perrault concludes that the "evidence of the corrosion was not hidden." *Id.* He also indicates that he saw damage around the vents from condensation that he attributes to the vents being defectively constructed. *Id.*

On June 6, 2022, in support of State Farm's Response to the Plaintiff's Motion for Partial Summary against State Farm, State Farm filed a "Second Declaration of James Perrault, P.E., S.E." Dkt. 69. This second declaration includes supplemental report from Mr. Perrault that is dated May 20, 2022. Dkt. 69, Exhibit B.

The Plaintiff now moves to strike portions of Perrault's second declaration (Dkt. 69) and Perrault's supplemental report (exhibit A to Dkt. 69). Dkt. 89. The motion to exclude should be granted as to Paragraph 10 of Perrault's second declaration and denied in all other respects.

## II. DISCUSSION

### A. MOTION TO EXCLUDE

Under Fed. R. Civ. P. 26(a)(2)(B), disclosure of expert testimony must be accompanied by an expert report and "contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them. . . ."

Presuming, without finding, that Mr. Perrault's opinions needed to be in a written report, the analysis does not end there. Under Rule 26(e)(1)(A) disclosing parties are "required to supplement their prior disclosures 'in a timely manner' when the prior response is 'incomplete or incorrect.'" *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), (*internal quotation marks omitted*). Further, "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule

26(a) that is not properly disclosed." *Id.* "[E]xclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." *Id.*

This opinion will first turn to whether the opinions in Mr. Perrault's second declaration and in the supplemental report are new. If so, this opinion will examine whether the failure to disclose was substantially justified or harmless.

    1. <u>Undisclosed New Opinions</u>?

The Plaintiff moves to strike portions of Perrault's second declaration (Dkt. 69) and Perrault's supplemental report (exhibit A to Dkt. 69). Dkt. 89. The portions of Perrault's second declaration (Dkt. 69) that the Plaintiff moves to strike are:

> <u>Paragraph 5</u>: After I received additional information and documents in the litigation, especially during and since the first session of my deposition, State Farm asked me to prepare a supplemental report. Attached as Exhibit B is a true and correct copy of my letter report dated May 20, 2022. The facts and opinions stated in this report are true and accurate and I incorporate them into this declaration as if fully set forth herein.

The Plaintiff's motion to strike this paragraph should be denied. State Farm has demonstrated that some of the records Mr. Perrault reviewed were received after his deposition. Accordingly, exclusion of this statement under Rule 37 is not appropriate.

> <u>Paragraph 9, lines 16-17</u>: "I observed damage around windows at Gold Creek that would not have occurred or would have been substantially less if flashing was correctly installed around windows."

The Plaintiff's motion to strike this portion of Paragraph 9 should be denied. Perrault opined in his initial report and in his deposition that damage occurred because of the lack of flashing. This not a new opinion, but merely phrased a different way. It should not be excluded as new.

> <u>Paragraph 10</u>: As an example showing that window flashings prevent water intrusion and damage, in 2020 I inspected buildings at another condominium

ORDER ON MOTION TO EXCLUDE - 7

>where windows were replaced in 2012, at which time flashing was added around the windows. No [water resistive barrier] was installed on those buildings. All of the damage around the windows appeared to have occurred before the windows were replaced, indicating that installation of the flashings prevented further damage.

The Plaintiff's motion to exclude this portion of Perrault's second declaration should be granted. The statement is new information and not relevant.

<u>Paragraph 11</u>: "Construction was also defective because the decks were not sloped outward away from the exterior wall as shown by the architectural drawings, and a topping slab was added, which was not shown in the architectural drawings."

The Plaintiff's motion to exclude this statement should be denied. Perrault testified at his deposition that the decks were not sloped and that a topping slab had been added. This is not a new opinion. He also testified that the use of the topping slab was a construction defect.

>Paragraph 12: A product called 'Tex-Cote' was reported used as the coating product on the exterior walls. This product was applied to MDO plywood siding on the west exterior wall of the [Gold] Creek building. I reviewed a copy of the manufacturer's product data sheet which indicates that plywood is not an approved substrate from this coating system. Tex-Cote therefore should not have been applied in this manner, and as applied it was a faulty product.

The Plaintiff's motion to exclude this portion of Mr. Perrault's second declaration should be denied. Mr. Perrault discussed the use of Tex-Cote and whether the way it was used on the Gold Creek buildings was in line with the manufacturer's recommendations at his deposition. While the Plaintiff maintains that his opinion on the Tex-Cote lacks foundation and is speculative, the issues raised go more to the weight that should be accorded the opinion not its admissibility based on the showing in the record.

<u>May 20, 2022 Supplemental Report</u>: The Plaintiff's motion to strike the supplemental report (Dkt. 84) should be denied. State Farm established that a supplemental report was

ORDER ON MOTION TO EXCLUDE - 8

warranted. The opinions in it are not new, but are a clarification of Perrault's first report and deposition testimony after additional information was reviewed.

2. <u>Substantially Justified</u>?

In any event, with the exception of the information in Paragraph 10, even if there are some opinions that could be considered "new" the failure to timely disclose them was substantially justified. The supplement was based, in part, on new information. It operated to clarify his opinions.

### III.  ORDER

**IT IS ORDERED THAT:**

- The Plaintiff's motion to strike State Farm's expert, Perrault's report (exhibit B to Dkt. 69) and certain portions of his second declaration (Dkt. 69) (Dkt. 89) **IS:**
    - **GRANTED, IN PART,** Paragraph 10 of the Second Declaration of James Perrault, P.E., S.E. (Dkt. 69 at 3), and
    - **DENIED, IN ALL OTHER RESPECTS**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 28th day of June, 2022.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge

ORDER ON MOTION TO EXCLUDE - 9