UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GOLD CREEK CONDOMINIUM-PHASE I ASSOCIATION OF APARTMENTS OWNERS, a Washington non-profit corporation,<br><br>    Plaintiff,<br>    v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Connecticut company, THE AETNA CASUALTY AND SURETY COMPANY, a Connecticut Company; TRAVELERS CASUALTY AND SURETY COMPANY, a Connecticut Company; AETNA CASUALTY AND SURETY COMPANY OF ILLINOIS, a Connecticut Company; TRAVERLERS CASUALTY INSURANCE COMPANY OF AMERICA, a Connecticut company; and DOE INSURANCE COMPANIES 1-10,<br><br>    Defendants. | CASE NO. 20-5690 RJB<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

This consolidated[1] matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment against Defendant State Farm Fire and Casualty Company ("State Farm") (Dkt. 47), State Farm's Motion for Summary Judgment (Dkt. 53), Plaintiff's Motion for Summary Judgment against St. Paul Fire and Marine Insurance Company, The Aetna Casualty and Surety Company, Aetna Casualty Insurance Company of Illinois, Travelers Casualty and Surety Company, and Travelers Casualty Insurance Company of America, (collectively "Travelers") (Dkt. 50) and Travelers Defendants' Motion for Partial Summary Judgment (Dkt. 55). The Court has considered the pleadings filed regarding the motions and the remaining file.

This insurance coverage dispute arises from water damage at the Gold Creek Condominium complex ("Gold Creek" or "complex") which is located in Tacoma, Washington. Dkts. 12 and 29. The Plaintiff condominium owners' association alleges that the Defendant insurers issued policies that covered the damage and that they have improperly denied coverage. The Plaintiff also makes claims for declaratory relief that the policies provide coverage, breach of contract, insurance bad faith, violations of the Washington Consumer Protection Act, and the Washington Insurance Fair Conduct Act. Dkts. 12 and 29.

The parties now cross move for summary judgment on the contract claims. For the reasons provided below, State Farm and the Travelers Defendants' motions (Dkts. 53 and 55) should be granted and the Plaintiff's motions (Dkts. 47 and 50) should be denied.

**I.     FACTS**

---

[1] On May 26, 2021, this case was consolidated with *Gold Creek Condominium – Phase I Assoc. of Apartment Owners v. Saint Paul Fire and Marine Ins. Co., et.al.,* U.S. Dist. Ct. for W.D. Wash. case number 21-5268, Dkt. 19. All future filings in these consolidated matters are to be filed in this case, *Gold Creek Condominium – Phase I Assoc. of Apartment Owners, v. State Farm Fire and Casualty Co.,* U.S. Dist. Ct. for W.D. Wash. case number 20-5690. *Id.*

Gold Creek consists of 72 residential units in three connected four-story buildings located at 3016 North Narrows Drive, Tacoma, Washington. Dkts. 56-1, at 6 and 48 at 13. The complex was completed in 1982 and sits on a bluff around 275 feet high with its west side overlooking the Tacoma Narrows waterway. Dkts. 49 at 2-3 and 48 at 13. Exterior decks off the units are located along the west side of the buildings. Dkt. 48 at 13.

Some of the complex's exterior walls are concrete masonry units with a stucco type finish. Dkt. 49 at 3. The remaining exterior walls are covered with plywood siding that is covered with the same stucco type finish. Dkts. 49 at 3 and 48 at 14. Behind the plywood siding is gypsum sheathing. *Id.* Gypsum sheathing helps prevent fires from spreading quickly; when it is exposed to water, it losses its capacity to resist fire. *Id.* Behind the gypsum sheathing is steel stud framing. Dkts. 49 at 3 and 48 at 14.

### A. INSURANCE POLICIES

State Farm issued an "all-risk" insurance policy on the property which was effective October 1, 1989 to October 1, 1990. Dkt. 48 at 91-136; and 56-3. It insured for "accidental direct physical loss except as provided in LOSSES NOT INSURED." Dkt. 48 at 126.

Two of the Travelers Defendants, Aetna Casualty and Surety Company of Illinois and St. Paul Fire and Marine Insurance Company, insured Gold Creek between October 1, 1991 and October 1, 1996. Dkts. 62-1 to 62-8. These polices also insured against "all risks of direct physical loss of or damage to" Gold Creek unless the loss is limited or excluded. *Id.* Travelers acknowledges that the "relevant provisions are substantially the same for all policy periods." Dkt. 51-4 at 16. Accordingly, each of these Travelers' policies will be referred to herein as the "Travelers' policy."

### B. DAMAGE INVESTIGATIONS, TENDER AND REPORTS

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 3

In October of 2017, the Plaintiff hired Larry Rouch of J2 Building Consultants, Inc. to investigate deterioration due to water intrusion. Dkts. 56-1 at 4-26 and 56-2 at 5 and 17. In his January 24, 2018 letter, Mr. Rouch noted that "[w]ater intrusion has been evident in the exterior walls, soffits, terraces, handrails and elevated entry walkways for some time." Dkt. 56-2, at 20. A limited intrusive investigation of two sample locations was conducted in April and May of 2018 by J2 Building Consultants, Inc. Dkts. 56-1 at 6 and 78 at 8. (This report is undated, but Plaintiff's current president states that the investigation occurred in 2018. Dkt. 78 at 8.) The J2 Building Consultants, Inc. "investigation revealed significant water intrusion and damage. The damaged areas are at critical waterproofing interfaces. No water resistive barrier systems were discovered during the investigations." Dkt. 56-1 at 26.

On March 13, 2019, the Plaintiff sent State Farm a letter tendering its insurance claim. Dkt. 48 at 7-8. On March 13, 2019 and March 15, 2019, the Plaintiff also tendered its claim to the Travelers Defendants. Dkts. 51-1 and 51-2. The J2 Building Consultants, Inc. report was attached to all the letters. *Id.*

On January 8-10, 2020, a joint exploratory investigation was conducted by the Plaintiff's representative Keith Soltner, State Farm's representative, James Perrault, and the Travelers Defendants' representative, Richard A. Dethlefs. Dkts. 49 at 3; 48 at 12; and 60-1. During this investigation, exploratory openings were made; the gypsum sheathing could not be seen until the siding was removed. Dkt. 48 at 16. Only one of the openings did not have water damage to the gypsum sheathing and it was in an area that was sheltered from wind-driven rain. Dkt. 49 at 4.

<u>State Farm's Expert</u>

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 4

On April 15, 2020 State Farm's expert, James Perrault, P.E., issued a report based on his review of the J2 Building Consultants, Inc. report and the 2020 joint exploratory investigation. Dkt. 48 at 10-79. His report found that:

> At the exploratory openings made in the exterior walls, exterior decks and exterior walkways . . . there was evidence of repeated water intrusion occurring judging by the staining and deterioration in the gypsum sheathing and corrosion in the steel framing at some of the investigated locations. The improper and/or inadequate construction of the exterior walls, and the failure to adequately maintain the building enclosure system at the exterior walls . . . led to rainwater infiltrating in during the frequent rainfall. The rainwater entered through gaps in siding, siding-to-window joints, failed caulking, failed or inadequate flashing assemblies and the failure to properly replace sealants at the joints over the years, which resulted in rainwater infiltrating into the exterior wall assemblies at some locations over the years.

Dkt. 48 at 22.

Plaintiff's Expert

Plaintiff's expert Keith Soltner, a licensed architect, issued a report based on the joint exploratory investigation. Dkt. 49 at 21-318. In Soltner's opinion, "water intrusion, in the form of rainwater events, including wind-driven rain, is the primary cause of the water damage identified at Gold Creek." Dkt. 49 at 24. He also points to "secondary causal factors" that "contributed to the presence of water damage" as follows:

- Walls are concrete masonry units . . . on the east elevations at the 3 lower levels as well as portions of the north and south elevations.
- Cracks in poured in place concrete walkway.
- Cracks in siding.
- Lack of adequate flashing.
- Lack of sealant joints at building penetrations, transitions in planes and openings.
- Lack of weather resistive barrier.
- Gaps, cracks and voids occur at walls, guardrails, transitions between materials and around windows and doors.

Dkt. 49 at 24. Soltner testified at his deposition that based on his "experience and observation during investigations" he concluded "that 0.2 inches of rain in a 24-hour period is the amount

that wets vertical surfaces that a wind will drive water vertically or horizontally into joints and crevices." Dkt. 56-24 at 8-9.

In his declaration, Soltner states that "[e]xposure to water causes the paper facer to debond from the gypsum core, causes the gypsum core to break into pieces, and eventually causes the sheathing to crumble." Dkt. 49 at 4. He states that during the investigation, he observed "debonded paper and embrittlement, but the gypsum sheathing had not yet crumbled to pieces." Dkt. 49 at 4. He states that "[t]his process of debonding and embrittlement likely worsened each year as the gypsum sheathing was exposed to water intrusion." *Id.*

At his deposition, Soltner testified that, he cannot look at rot and indicate how long it took for rot to develop. Dkt. 56-24 at 3. He acknowledged that he cannot look at deteriorated gypsum sheathing, plywood siding or wood framing and develop an opinion as to how long it took to deteriorate. *Id.* at 3-4. Soltner testified that not every time water got behind the siding it caused damage. *Id.* at 18. He acknowledged that there is no way to quantify how much water entered in any particular storm. *Id.* at 25. Soltner admits that he cannot point to any specific damage at a specific location and state that it occurred between October 1989 and October 1990. *Id.* at 25-26. He states that all he can do is "identify storm events that will allow water entry in that period of time." *Id.* at 26.

After two hearings, some of Mr. Soltner's opinions have been excluded, including portions of his opinion regarding when loss and damage occurred. Dkt. 109.

Travelers Defendants' Experts

The Travelers Defendants expert, Richard Dethlefs, P.E., states that he disagrees with Soltner's conclusion that moisture related distress at Gold Creek resulted from wind-driven rain. Dkts. 60-2 and 60-3. He opines that "[o]riginal construction deficiencies, poorly implemented

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 6

repairs, inadequate maintenance and general wear and tear have contributed to ongoing water infiltration at the exterior walls, walkways, and decks at Gold Creek." Dkts. 60-2 and 60-3. Dethlefs notes that "water intrusion has likely been occurring over an extended period of time, dating back to the original construction." *Id.*

### C. COVERAGE DENIALS

On April 28, 2020, State Farm denied coverage for the Plaintiff's claim. Dkt. 48 at 81-88. State Farm indicated that specific exclusions (including construction defects and inadequate maintenance) precluded coverage under the policy. *Id.*

On July 26, 2021, Travelers denied coverage for the Plaintiff's claim. Dkt. 51-4. It took the position that the loss was not fortuitous (unexpected), was subject to exclusions (like for defective construction, inadequate repairs, wear and tear, deterioration and repeated seepage or leakage of water), and that the damage exceeding the deductible did not occur during the policy period. Dkt. 51-4, at 2.

## II. DISCUSSION

### A. WASHINGTON SUBSTANTIVE LAW AND FEDERAL PROCEDURAL LAW APPLY

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'"

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996)).

### B. MOTIONS TO STRIKE

The Plaintiff moves to strike State Farm's expert, Perrault's supplemental report (Exhibit B to Dkt. 69) and certain portions of his second declaration (Dkt. 69). Dkt. 89. This motion largely repeats the arguments in a separately filed motion to exclude (Dkt. 84) which was granted, in part, and denied, in part on June 28, 2022 (Dkt. 107). The Plaintiff's motion to strike (Dkt. 89) should be granted, in part, and denied, in part. To the extent that Perrault offers opinions which are truly new, they were not considered for purposes of this motion. Further discussion on these issues are addressed in the order on the motion to exclude (Dkt. 107) and its reasoning is adopted here.

The Plaintiff also moves to strike Travelers' experts Dr. Brian Flynn and Dr. Donald Bender. Dkt. 70. For purposes of this motion, the Plaintiff's motion (Dkt. 70) should be denied. The issues raised by the Plaintiff go to the slight weight to be accorded their testimony.

In its reply, State Farm moves to strike portions of the Declaration of William Jackson (Dkt. 78, at 3-4), portions of Declaration Alan Stay (Dkt. 79) and Exhibits K and L of the Declaration of Stein (Dkt. 77). Dkt. 85. State Farm's motion to strike portions of the Declaration of William Jackson (Dkt. 85), that purport to testify to what another resident would have thought, should be granted and the testimony excluded based on a lack of personal knowledge. State Farm's motion to strike portions of the Declaration of Alan Stay (Dkt. 85) should be denied. While the foundation for some of Mr. Stay's testimony is not wholly clear, this testimony was of minimal use in determining the summary judgment motions. State Farm's

motion to strike Exhibits K and L to the Declaration of Daniel Stein (Dkts. 77) (Dkt. 85) should be granted. These documents are not relevant to the summary judgment motions.

### C. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will

1 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

2 to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

3 Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not

4 be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### D. GENERAL CONTRACT RULES AND ALL-RISK POLICIES

In Washington, an insurance policy is construed as a contract and given "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171 (2017), *as modified* (Aug. 16, 2017)(quoting *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash.2d 618, 627 (1994)). Every insurance contract is "construed according to the entirety of its terms and conditions as set forth in the policy." *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 710 (2016). Courts in Washington do not interpret an insurance contract's phrases in isolation and give effect to each provision. *Certification From United States Dist. Court ex rel. W. Dist. of Washington v. GEICO Ins. Co.*, 184 Wn.2d 925, 930 (2016).

"Interpretation of the terms of an insurance policy is a matter of law." *Allstate Inc. Co. v. Raynor,* 143 Wash.2d 469, 476 (Wash. 2001). "If terms are defined in a policy, then the terms should be interpreted in accordance with that policy definition." *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 576 (1998). "Undefined terms are to be given their plain, ordinary, and popular meaning." *Xia*, at 6. If language in an insurance contract is susceptible to two different but reasonable interpretations, it is considered "ambiguous." *Lui* at 712. However, where the policy language is clear and unambiguous, [a Washington] court will not modify the contract or create ambiguity where none exists." *Xia,* at 6.

As is relevant here, both State Farm and Travelers issued "all-risk" policies to the Plaintiff. Dkts. 56-3 and 62-1 – 62-8. All-risk policies generally allocate risk to the insurer; "coverage is commonly triggered - or excluded - when a specified peril 'causes' a loss." *Vision One, LLC v. Philadelphia Indem. Ins. Co.,* 174 Wash.2d 501, 514 (2012). Exclusionary clauses, like those at issue here, "are to be most strictly construed against the insurer." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 406 (2010).

### E. CROSS MOTIONS ON THE CONTRACT CLAIM AGAINST STATE FARM

Both State Farm and the Plaintiff move for summary judgment on the Plaintiff's breach of contract claim against State Farm. (Dkts. 53 and 47 respectively). State Farm moves for summary judgment arguing that this lawsuit is barred by the one-year limitations provision in the policy. Dkt. 53. The Plaintiff contends that it is entitled to summary judgment because wind driven rain is a covered peril under the policy and none of the exclusions apply. Dkt. 47. Because State Farm's motion for summary judgment should be granted on the limitations provision of the policy (see below), it is not necessary to reach the other grounds supporting State Farm's motion for summary judgment.

The Plaintiff's motion for summary judgment on whether the policy covers its loss (Dkt. 47) should be denied.

#### One-Year Limitations Provision in State Farm Policy

State Farm moves for summary judgment arguing that this lawsuit is barred by the one-year limitations provision in the policy and maintains that there is insufficient evidence that loss occurred within the policy period. Dkt. 53. The Plaintiff opposes the motion and argues that the suit limitations period did not begin to run until hidden damage was exposed to view by selective demolition (the removal of the siding at select locations as part of the intrusive investigations).

Dkt. 76. The Plaintiff asserts that Mr. Soltner's testimony establishes, at a minimum, issues of fact as to whether damage occurred during the policy period. *Id.*

The State Farm policy "LOSSES INSURED" section states it "applies only to loss to property during the policy period . . ."(Dkt. 56-3 at 31), which was October 1, 1989 to October 1, 1990. The policy also provides that "no action shall be brought unless there has been compliance with the policy provisions . . . and the action is started within one year after the occurrence causing loss or damage." Dkt. 56-3 at 19. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in . . . property damage." *Id.* at 29.

State Farm's motion for summary judgment based on the limitation provision and "LOSSES INSURED" section of the policy should be granted. As stated above, insurance contracts are given "fair, reasonable, and sensible" meaning. *Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 666, (2000) *as amended* (Jan. 16, 2001).

Reading the two provisions together, the policy limits the timeframe to file suit to one year after the occurrence causing the loss or damage and the loss or damage must occur during the policy period of 1989 to 1990. The Plaintiff maintains that the "occurrence causing the loss or damage" was wind-driven rain. The express policy language requires that the Plaintiff bring its case not more than one year after the wind-driven rain caused the loss. The language in this policy does not depend on when the loss happens but when the "occurrence causing the loss" happens.

The Plaintiff points to *Panorama Village Condominium Owners Ass'n Board of Directors v. Allstate Ins., Co.,* 144 Wn.2d 130, 138 (2001) for the proposition that "loss from progressive hidden damage continues to 'occur' – and the suit limitations period does not begin

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 12

to run – until hidden damage was exposed to view by selective demolition." Dkt. 76 at 11-12. The *Panorama* Court examined the covered loss, which was "'for risk of direct physical loss involving collapse of a covered building' by 'hidden decay.'" *Id.* at 140. The Court held that based on the policy language, "the peril insured against continues to exist until at least the earlier of (a) actual collapsed or (b) the end of 'hidden decay.'" *Id.* The policy at issue there also required that suit be brought within one year "after a loss occurs." *Id.* at 137. The *Panorama* Court concluded that the "loss" did not occur until the hidden decay was discovered. *Id.*

The language in the State Farm policy is substantially different. It requires that suit be brought one year "after the **occurrence** causing loss or damage;" not after the loss occurs. The evidence does not give any reliable date of when the loss or damage occurred, so the policy was not triggered. The conclusion in *Panorama* regarding the discovery of hidden damage does not apply here.

Moreover, the Plaintiff also fails to recognize the policy's second requirement: that the loss must occur during the policy period. The State Farm policy was in place over 32 years ago. The Plaintiff has failed to point to sufficient issues of fact from which a jury could conclude that an "occurrence causing the loss or damage" happened between October 1, 1989 and October 1, 1990, the policy term. State Farm is entitled to a judgment as a matter of law.

### F. CROSS SUMMARY JUDGMENT MOTIONS ON THE CONTRACT CLAIM AGAINST TRAVELERS DEFENDANTS

The Travelers Defendants move for summary judgment arguing that the Plaintiff cannot prove that covered physical damage "commenced" during the policies' effective period. Dkt. 55.

The Plaintiff moves for summary judgment against the Travelers Defendants asserting that the Travelers all-risk policies provide coverage for its loss by wind-driven rain and that

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 13

1 wind-driven rain is a covered peril. Dkt. 50. It argues that none of the exclusions in the
2 Travelers Defendants' policies apply. *Id.*

3     The Travelers Defendants' motion for summary judgment (Dkt. 55) should be granted.
4 Accordingly, the Plaintiff's motion for summary judgment (Dkt. 50) should be denied.

5     <u>Conditions of Coverage – Damage Sufficient to Meet the Deductible in the Policy Period</u>

6     The Travelers' Defendants persuasively argue that they are entitled to summary judgment
7 because required conditions for coverage were not met: the damage that was sufficient to meet
8 the deductible has not been proven to have occurred during the policy periods. Dkt. 55.

9     "The party asserting coverage bears the burden of proving the loss is a covered
10 occurrence within the policy period." *Walla Walla Coll. v. Ohio Cas. Ins. Co.,* 149 Wn. App.
11 726, 730 (2009). Plaintiff has failed that burden here.

12     The Travelers policy provides that "[Travelers] will cover loss or damage commencing . .
13 . during the policy period shown in the Declarations. . ." Dkt. 62-1 at 35. The "Deductible
14 Clause" states that "[Travelers] will not pay for loss or damage in any one occurrence until the
15 amount of loss or damage exceeds the Deductible . . ." Dkt. 62-1, at 32. The policy defines
16 "occurrence" to mean "an accident, including continuous or repeated exposure to substantially
17 the same harmful conditions." Dkt. 62-1, at 53.

18     The term "commencing" is not defined in the Travelers policy and is ambiguous. It could
19 arguably refer to the first time the type of loss ever occurred – so if the Plaintiff's claim is for a
20 single progressive loss with damage beginning at construction, the contention would be that the
21 loss or damage occurred outside the policy period. "Commencing" could also refer to the first
22 time the loss occurred in the policy period. Because it is ambiguous and should therefore be
23 construed against the insurer, this clause has been interpreted to mean that the loss or damage

"commenced" on each "identifiable instance of new damage or loss" in the policy period. *See Sunwood* at 5. Accordingly, the Plaintiff must identify instances of new damage during the Travelers policy's periods to trigger coverage. *Id.*

This the Plaintiff has failed to do. It has failed to point to competent evidence that there were instances of new damage during the relevant policy periods. Further, because it is not clear that any covered loss occurred during the policy period, the Plaintiff has failed to show that there was damage that exceeded the deductible for any one "occurrence." Travelers is entitled to a judgment on this issue as a matter of law.

G. **CONCLUSION**

The Defendants' motions for summary judgment (Dkts. 53 and 55) should be granted. The Plaintiff's claims for declaratory relief that the policies provide coverage and for breach of contract should be dismissed. The parties should prepare for trial on the remaining issues.

### III. ORDER

**IT IS ORDERED THAT:**

- The Plaintiff's motion to strike State Farm's expert, Perrault's report (exhibit B to Dkt. 69) and certain portions of his second declaration (Dkt. 69) (Dkt. 89) **IS GRANTED, IN PART, AND DENIED, IN PART**; The Plaintiff's motion to strike the testimony of Travelers' experts Dr. Brian Flynn and Dr. Donald Bender (Dkt. 70) **IS DENIED**;

- State Farm's motion to strike portions of the Declaration of William Jackson (Dkt. 78, at 3-4) that purport to testify to what another resident would have thought (Dkt. 85) **IS GRANTED**; State Farm's motion to strike portions of the Declaration of Alan Stay (Dkt. 85) **IS DENIED**; State Farm's motion to strike

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 15

Exhibits K and L to the Declaration of Daniel Stein (Dkts. 77) (Dkt. 85) **IS GRANTED**;

- State Farm's Motion for Summary Judgment (Dkt. 53) **IS GRANTED**;
- Travelers Defendants' Motion for Partial Summary Judgment (Dkt. 55) **IS GRANTED**;
  - Plaintiff's claims for declaratory relief that the policies cover the loss and for breach of contract **ARE DISMISSED;**
- Plaintiff's Motion for Partial Summary Judgment against Defendant State Farm (Dkt. 47) **IS DENIED**; and Plaintiff's Motion for Summary Judgment against the Travelers Defendants (Dkt. 50) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 1st day of July, 2022.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge